'Alexander,
special judge, delivered the opinion of the •court.
This is an action of ejectment, in which a verdict and judgment were rendered for the plaintiff below, to reverse which, a writ of error is prosecuted to this court.
Several objections have been urged against the charge of the circuit judge to the jury, as well as to his opinion in regard to the admissibility of testimony.
1. It is insisted here that the court improperly admitted parol evidence of the contents of the title bond executed by Gillenwaters to Darter. Henry Darter, a witness for plaintiff, proved that he understood the title bond had *93 been lost. Elijah. G. Gillenwaters proved that the title bond had been surrendered to him, and was lost. In this state of the proof, was it necessary that the plaintiff should have made an affidavit of the loss of the bond, in order to let in parol evidence of its contents? We think not. As a general proposition it may be true that a party, offering to prove the contents of a written paper, must make an affidavit, himself, of the loss or destruction of the paper, inasmuch as in most cases, he is the only one who can have a personal knowledge of the fact. But in this case, the very individual who had the custody and control of the paper, proves its loss. Being a disinterested witness, his testimony is more reliable than would have been the affidavit of the plaintiff in the case.
2. It is insisted that the circuit judge erred in charging the jury, “ that if the owner of one or more adjoining tracts of land, sell a portion of it and make a survey of it, and a deed in pursuance of that survey,, the purchaser is entitled to the land actually surveyed, provided those lines and corners can be established and identified, as having been actually run and made at the time of the sale, and that course and distance must yield to what is proved to have been the actual survey.” At the time of the sale to Gillenwaters, Hopkins owned a large body of land, including that now in dispute. They went on the ground and Hopkins pointed out and' designated the land which Gillenwaters agreed to buy. Afterwards they procured a surveyor, run out and marked the lines and corners of the tract, and Hopkins executed a deed for the same to Gillenwaters. The party making the sale had a perfect right to make what corners he pleased, on his own land, and call them by whatever *94 name he chose. The purchaser cannot be concluded by any technical rule of law from shewing the land he actually bought and had surveyed to him, although, by an error or oversight in drawing his deed, there may be some conflict between the courses and distances called for, and those actually run and marked at the time of the survey. The charge of the circuit judge, upon this point, we deem to be in substantial, if not literal, conformity to the repeated adjudications of this court. The doctrine of re-marking, is widely different from the principle inculcated upon the jury in this part of the charge, and does not properly come in question in this case. The enquiry was not in reference to a boundary that had been re-marked, but as to the lines and corners which had been run and made at the time of the original survey.
3. It is alledged that the deed, under which the defendant in error claims title, is void on account of champerty; the land conveyed, being adversely held at the date of the deed.
The act of 1821, clearly avoids all contracts for the sale of lands, tenements or hereditaments, made between individuals, which, at the time of the contract, were adversely holden. In construing the statutes against champerty, both in England and in this country, it has been repeatedly held that a conveyance of lands, made in pursuance and fulfillment of a previous bona fide. contract, which had been entered into prior to .the adverse possession, is not within the operation of the statutes. Com. Dig. vol. 5, 26; Bacon’s Abr. 1, 575; Jacobs’ Law Dic. 1, 421; 7 Yerg. Rep. 384; 10 Yerg. 460. This settled construction of the act of 1821, has not been seriously questioned in this case, but it is urged, *95 with nracb earnestness, that the terms “ bona fide agreement,” used by the circuit judge, were calculated to mislead the jury and be deemed applicable to a mere parol, as well as a written contract. It is true, that the words, “bona fide,” literally mean good faith, but when used in reference to an agreement, bargain or sale, import something more. When we speak of a bona fide contract, agreement or covenant, we mean one that is legal, valid, subsisting; such a contract as imposes legal obligations, and may be enforced in the judicial tribunals of the country. A verbal or parol contract for the sale of lands would have been null and void, or, in other words, no contract at all, and the judge could not have intended, nor the jury have supposed him,to have reference to any such contract or agreement. Aside, however, from this technical ground, it is to be observed, that no parol contract was proven, or attempted to be established (in .the trial. The only contract or agreement about which there was any evidence, being the one shown by the title bond. The charge, then, must be taken in connexion with the proof, and not tested by a different state of facts from those presented to the jury. There was then neither necessity nor propriety, in the judge being more explicit than he was, in using the words “bona fide agreement.”
4. It is urged that the court erred, in permitting to be read to the jury, the deed executed by Gillenwaters to the defendant in error, on the 29th day of October, 1835, but not registered until some days after the commencement of the action.
The 12th section of the act of 1831, which declares all such deeds and other instruments mentioned in the 1st section and not proven and registered as required, *96 null and void, as to existing and subsequent? creditors, and bona fide purchasers without notice, leaves the relation of the parties to the deed unaffected by the neglect to register according to the provisions of the act. “ It has been held in North Carolina, and repeatedly in this State, that an unregistered deed conveys an inchoate legal title, which may, at any time, be made perfect by registration and this by relation from the date of the deed.” In the case of Hays vs. McGuire, reported in S' Yerger, the plaintiff, in deraigning his title, offered in evidence a deed executed before the passage of the act of 1831, but registered afterwards and after the commencement of the suit. In that case it was held that the deed passed the title from its date as between the parties and was admissible in evidence before the jury. We therefore think that there was no error in the charge of the judge upon this point. Let the judgment of the circuit court be affirmed.